ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8-6-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - -x
WHITNEY PARKER, on Behalf of Herself and
Others Similarly Situated, and
Derivatively on Behalf of Barnes &
Noble, Inc.,

      Plaintiff,

   - against -

LEONARD RIGGIO, STEPHEN RIGGIO, GEORGE
CAMPBELL, JR., DAVID G. GOLDEN, WILLIAM
DILLARD II, PATRICIA L. HIGGINS,
IRENE R. MILLER, MARGARET T. MONACO,
DAVID A. WILSON, MICHAEL J. DEL GIUDICE,
and LAWRENCE S. ZILAVY,

      Defendants,

   - and -

BARNES & NOBLE, INC., a Delaware
Corporation,

      Nominal Defendant.
- - - - - - - - - - - - - - - - - - - - - -X

10 Civ. 9504 (LLS)

OPINION AND ORDER

   In Strugala ex rel. Barnes & Noble, Inc. v. Riggio, 817 F.

Supp. 2d 378 (S.D.N.Y. 2011), I dismissed the original complaint

in this action, holding that Strugala had not adequately pled

his reasons for failing to make a pre-suit demand on the Barnes

& Noble ("B&N") board of directors and thus lacked standing to

assert his derivative claim for violations of section 14(a) of

the Securities and Exchange Act. I declined to exercise

supplemental jurisdiction over his state law claims and granted

him leave to file an amended complaint.

Strugala no longer wishes to proceed with this action. However, Parker, also a B&N shareholder, has filed an amended complaint, claiming that she has standing to do so since her claims are all derivative or on behalf of a putative class of B&N shareholders, and thus her substitution for Strugala is in name only.

All defendants move under Fed. R. Civ. P. 23.1 to dismiss Parker's derivative claims, arguing that Parker fails to plead adequately that a pre-suit demand on B&N's board should be excused.   The individual defendants (i.e., Campbell, Golden, Dillard, Higgins, Miller, Monaco, Wilson, Del Giudice, Zilavy, and Leonard and Stephen Riggio) move under Fed. R. Civ. P. 12(b)(1) to dismiss Parker's state law claims for lack of subject-matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) to dismiss all of Parker's claims for failure to state a claim on which relief can be granted.

## The Amended Complaint

The amended complaint pleads substantially the same allegations and claims as the original complaint. See Strugala, 817 F. Supp. 2d at 381-85 (summary of original complaint's allegations).   The crux of those allegations is that defendant Leonard Riggio, B&N's founder, has used his considerable influence over B&N's directors to cause the company to engage in a number of transactions benefitting Riggio and his family at

2

B&N's expense.  Among those transactions were B&N's purchase of College Booksellers, Inc. from Riggio and his wife, and the approval of a stockholder rights ("poison pill") plan, designed to keep Riggio and B&N's directors in office.

Parker alleges that defendants violated section 14(a) of the Securities and Exchange Act by issuing misleading proxy statements stating that certain B&N director candidates were independent when in fact they were beholden to Leonard Riggio, and that the poison pill was designed to benefit B&N shareholders when in fact it was designed to keep B&N's incumbent directors in office.

Parker attempts to cure the original complaint's defects by pleading additional allegations regarding B&N's directors' lack of independence from defendant Leonard Riggio, which she contends excuse pre-suit demand.

Parker alleges diversity of citizenship as a basis for this Court's jurisdiction, and contends that the Court must retain jurisdiction over the action even if her sole federal claim is dismissed.

## Parker's Section 14(a) Claim

Because Parker brings her section 14(a) claim derivatively, Fed. R. Civ. P. 23.1(b)(3) requires her to "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and,

3

if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."

Under Delaware law, Parker's derivative claims must be dismissed for failure to make a demand on B&N's board if she has not alleged facts creating a reasonable doubt that "(1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

**A.**

Where, as here,

> a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed.

Braddock v. Zimmerman, 906 A.2d 776, 786 (Del. 2006).

When Parker filed the amended complaint, B&N's directors were Leonard Riggio, George Campbell, Jr., Patricia Higgins, William Dillard II, Irene Miller, David Golden, David Wilson, Mark Careleton, Gregory Maffei, and William Lynch. Parker does not dispute that Golden, Wilson, Maffei, and Carelton are disinterested and independent, and defendants concede that Riggio and Lynch cannot disinterestedly consider a pre-suit

4

demand.   Demand is therefore excused if Parker's allegations create a reasonable doubt that at least three of the remaining four directors are disinterested and independent.   See Highland Legacy Ltd. v. Singer, No. Civ. A. 1566-N, 2006 WL 741939, at *4 (Del. Ch. Mar. 17, 2006) ("The test of futility is whether at the time of filing the majority of directors could have impartially considered and acted upon the demand.").

In "the demand-futile context, a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons doing the controlling)." Aronson, 473 A.2d at 816 (internal quotation marks omitted); see also Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993) ("To establish lack of independence, Blasband must show that the directors are 'beholden' to the Rales brothers or so under their influence that their discretion would be sterilized.").

### Campbell

In considering the motion to dismiss the original complaint, I ruled that Strugala had not pled facts sufficient to create a reasonable doubt that Campbell is disinterested and independent.   See Strugala, 817 F. Supp. 2d at 386-87.   The amended complaint, like the original complaint, alleges that Campbell cannot disinterestedly consider a demand to sue on the

5

challenged transactions, because he has "approved a number of transparently self-interested transactions designed solely to benefit Leonard Riggio and/or the Riggio family at the expense of the Company and its shareholders" and thus "faces a substantial likelihood of liability for breaches of fiduciary duties since becoming a Board member in 2008." Am. Compl. ¶ 155.[1] It alleges additional reasons why Campbell cannot independently consider a demand to sue:  his position as president of Cooper Union for the Advancement of Science and Art, which Riggio donates money to, his donations to the same political candidates that Riggio supports, and his wife's position as an art historian and dean at New York University, Riggio's alma mater.

    According to the amended complaint, Campbell was named president of Cooper Union, "in large part because of his legendary fundraising abilities in New York's art and philanthropic circles, in which the Riggios remain a staple." Id. ¶ 157.  "To keep his pledge" to meet certain funding goals, "Campbell relied on people like the Riggios." Id. ¶ 158.  The "annual Franzen Lecture on Architecture and the Environment," co-sponsored by the Cooper Union's architecture school, is "made possible by contributions from the Riggio Foundation and other

---

[1] The allegations that the individual defendants face a substantial likelihood of liability for their approval of the challenged transactions and that B&N's directors and officers insurance would not indemnify them in this lawsuit were previously rejected by this Court in Strugala, 817 F. Supp. 2d at 386. The amended complaint contains identical allegations, which for the reasons stated in Strugala do not create a reasonable doubt as to the directors' independence.

donors." Id. (internal quotation marks omitted). Parker alleges that Campbell and Riggio have "intertwining business relationships," since Cooper Union was a volunteer supporter of the Mentoring USA program, a charity to which Leonard Riggio contributed, and since "Leonard Riggio and Campbell contributed thousands of dollars to the same democratic candidates in political campaigns in 2008." Id. ¶ 160.

> Moreover, Campbell's wife is an art historian and the dean of Tisch School of the Arts of New York University ("NYU"). Mrs. Campbell also served as New York City's commissioner of cultural affairs. Like the Riggios, the Campbells have been a fixture in New York's art and philanthropic circles for years. The Campbells and the Riggios regularly socialize at events and fundraisers. Leonard Riggio has made significant financial contributions to NYU, his alma mater. These intertwining relationships prevent Campbell from making any decision on Barnes & Noble's behalf that might have any adverse consequences to the Riggios. As a result, demand is futile as to Campbell.

Id. ¶ 161.

Because under Delaware law "approving of or acquiescing in the challenged transactions, without more," is "insufficient to raise a reasonable doubt of a director's ability to exercise independent business judgment," Cal. Pub. Emps.' Ret. Sys. v. Coulter, No. Civ. A. 19191, 2002 WL 31888343, at *9 (Del. Ch. Dec. 18, 2002) (footnote omitted), Parker argues that she has alleged more than Campbell's approval of the challenged transactions and that her allegations, taken together,

demonstrate "the intertwining connections between Campbell and the Riggios." Parker's Opp'n Br. 20.

In Coulter, 2002 WL 31888343, at *9, the court found that defendant Mandigo was not independent of former CEO Coulter, because "Mandigo and Coulter are lifelong friends," "Mandigo's son's livelihood is dependent on Coulter because Coulter is the CEO of Lone Star and Mandigo's son is the general manager of a Lone Star-owned restaurant in Denver," "Mandigo was a director and approved or acquiesced in all of Coulter's alleged self-dealing transactions," and "Mandigo was a director during the time Coulter was permitted to shirk his duties at Lone Star in preparation for the IPO of TENT. During that time Mandigo owned TENT stock, from before the IPO, and had a financial interest in the success of TENT."

Unlike in Coulter, where Mandigo and Coulter were lifelong friends, Mandigo was financially interested in one of the challenged transactions, and Mandigo had reason to fear for his son's livelihood, the allegations here show only that Riggio donates to Cooper Union, and that Riggio and Campbell are members of "New York's art and philanthropic circles" and support the same causes.

Parker alleges that Leonard Riggio has contributed to Cooper Union, but acknowledges that Campbell has pledged to raise tens of millions of dollars annually and that support for

Cooper Union comes from the Riggios "and others."   Parker does not allege the relative magnitude or frequency of Riggio's donations during Campbell's eleven-year tenure as president, and thus it is impossible to ascertain their importance to Cooper Union.   The mere allegation of Riggio's past contribution does not suggest that his donations were so important that Campbell would risk his reputation and approve Riggio's wrongdoing rather than forego Riggio's future donations.   See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1052 (Del. 2004) ("To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director.").

The allegations that Cooper Union works with Mentoring USA, an organization Riggio supports, and that Campbell and Riggio contribute to the same political candidates, do not, as Parker alleges, show "intertwining business relationships with the Riggios beyond Barnes & Noble's boardroom."   See Am. Compl. ¶ 160.   They show only that Campbell and Riggio prefer the same charity and candidates.

9

Parker alleges that Riggio contributes to his alma mater, NYU, where Campbell's wife works, but does not allege that Mrs. Campbell's "livelihood is dependent" on Riggio or his donations. From the amended complaint, it is unclear whether Riggio even knows that Mrs. Campbell works for NYU.

Accordingly, Parker does not allege particularized facts creating a reasonable doubt that Campbell is disinterested and independent.

### Higgins

Parker alleges the following regarding Higgins's ability to consider a pre-suit demand:

> 167. Demand is futile as to Higgins because she faces a substantial likelihood for liability for breaches of fiduciary duties since becoming a Board member in 2006. While a member of the Board, Higgins has approved a number of transparently self-interested transactions designed solely to benefit Leonard Riggio and/or the Riggio family at the expense of the Company and its shareholders, including the College Booksellers acquisition, and leases and business transactions with Riggio-family owned companies on grossly unfair terms. In addition, Higgins rubber-stamped Leonard Riggio's demand to have Stephen Riggio succeed him as CEO in 2002. This rubber-stamping demonstrates that Higgins is beholden to Leonard Riggio. By placating to the Riggios' demands, Higgins received hundreds of thousands of dollars in director compensation every year. Moreover, Higgins approved the poison pill, designed solely to ensure Leonard Riggio's continued control over the Company and Higgins and the other Board members' continued entrenchment on the Board. These actions subject Higgins to a substantial likelihood of liability for breaches of fiduciary duties; accordingly, she will not disinterestedly consider a demand to bring suit against herself.

The only allegation that was not in the original complaint is that Higgins approved Stephen Riggio's appointment as CEO. However, that additional instance of Higgins's approval of an allegedly self-interested transaction does not create additional doubt as to Higgins's independence from Leonard Riggio.  As I held in Strugala, 817 F. Supp. 2d at 387:

> In "the demand-futile context a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or the person doing the controlling.)" Aronson, 473 A.2d at 816 (internal quotation marks omitted).  Plaintiff alleges no particularized facts regarding Leonard Riggio's control over Campbell and Higgins.  The allegation that they approved "a number of self-interested transactions" does not create a reasonable doubt as to their independence.  See id. ("The director's approval, alone, does not establish control").

Parker argues that in Strugala "the Court failed to consider the allegations of Higgins's approval of the self-interested transactions, together with the allegations of her director pay.  See Dkt. No. 26 at 16.  Viewed as a whole, Ms. Parker's allegations demonstrate that Higgins in beholden to Leonard Riggio."   Parker's Opp'n Br. 27 n.9 (emphasis in original).   In support of that argument, she cites the amended complaint's allegation that Higgins "served on the Barnes & Noble Board from 1999 to 2004 and again from June 2006 to present.  Higgins is a member of the Audit Committee and the

Corporate Governance and Nominating Committee."   Am. Compl. ¶ 26.   That allegation gives no weight to the contention that Higgins is beholden to Riggio:   nowhere does it state that Riggio was responsible for Higgins's election to the B&N's board (and her resultant compensation).   Therefore, that allegation, even when considered along with the transactions Higgins approved, does not create a reasonable doubt that Higgins is independent from Riggio.

                              *  *  *  *

     Because the amended complaint's allegations do not create a reasonable doubt that Campbell and Higgins are disinterested and independent, they do not create a reasonable doubt that the majority of the board is disinterested and independent.

                                B.

     The allegations in the original complaint did not plead that demand to sue for defendants' alleged violation of section 14(a) was excused under Aronson's second prong, because they did not allege "particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision" to issue allegedly misleading proxy statements.   See Strugala, 817 F. Supp. 2d at 388-89 (internal quotation marks omitted).

     The amended complaint contains no new allegations regarding

                                12

the board's decision-making process in issuing the contested proxy statements.   In her opposition brief (at p. 14, n.4), Parker states, "In this motion, Defendants made no new argument based on Aronson's second prong.   Ms. Parker incorporates by reference the arguments on that prong stated in plaintiff's opposition to the previous motion to dismiss."

Because the Court already rejected those arguments, it concludes that the amended complaint's allegations do not create a reasonable doubt that the board's decision that certain directors were independent and recommendation to ratify the poison pill were valid exercises of business judgment.

Parker's allegations do not create a reasonable doubt under either of Aronson's prongs, and therefore she has not adequately pled that pre-suit demand for her section 14(a) claim should be excused.   Accordingly, Parker's section 14(a) claim is dismissed.

### Parker's State Law Claims

### A.

The individual defendants argue that Parker's derivative claims do not meet the $75,000 amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a), and thus she has not adequately pled jurisdiction under the diversity statute.

"A party invoking the jurisdiction of the federal court has

13

the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994), quoting Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975). "Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of the evidence.'" United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994), (brackets in United Food), quoting McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

Parker seeks equitable relief, see, e.g., Am. Compl. Prayer for Relief ¶ C ("Declaring and decreeing that the Individual Defendants' conduct has disenfranchised Plaintiff and the Class and that the Individual Defendants breached their duties directly owed to Plaintiff and the Class"), and "such other and further relief as this Court may deem just and proper," id. ¶ M, but does not seek a specified amount of damages. Nevertheless, she contends that she alleges that the individual defendants caused millions of dollars of harm to B&N, and thus alleges that that the matter in controversy exceeds $75,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by

14

the value of the object of the litigation." <u>Hunt v. Wash. State</u>
<u>Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977).

Parker seeks declarations that the individual defendants
have breached their fiduciary duties, various orders directing
the individual defendants to comply with those duties,
invalidation of the poison pill, and invalidation of the 2010
director elections.  She argues that that relief "is worth
hundreds of millions of dollars" to B&N because B&N's market
capitalization exceeds $830 million and because it would cost
the individual defendants over $75,000 to comply with the
requested injunctions.  Parker's Opp'n Br. 31 & n.11.

However, "the prevailing method of calculating value in
this Circuit is the 'plaintiff's viewpoint' approach, where one
calculates the value to the plaintiff, not the cost to the
defendant." <u>Dimich v. Med-Pro, Inc.</u>, 304 F. Supp. 2d 517, 519
(S.D.N.Y. 2004).  Since B&N is the "real party in interest" in
Parker's derivative claims, B&N is treated as the plaintiff for
purposes of the amount-in-controversy analysis.  <u>See</u> <u>Myers v.</u>
<u>Long Island Lighting Co.</u>, 623 F. Supp. 1076, 1079 (E.D.N.Y.
1985).  Therefore, the value of any equitable relief to B&N, not
the defendants' compliance costs, controls the analysis.
Furthermore, B&N's market capitalization does not affect the
analysis, since Parker does not allege that B&N's market
capitalization is "in controversy".

15

Valuing the requested equitable relief from B&N's perspective requires speculation. It is impossible to state with "reasonable probability" that declarations that the individual defendants have breached their fiduciary duties to B&N are worth more than $75,000. Injunctions prohibiting the individual defendants from breaching those duties – breaches already prohibited under Delaware law – are "incapable of reduction to monetary terms." See Moore, 511 F.2d at 1006. Similarly, any attempt to assign a monetary value to an order invalidating B&N's September 2010 director elections would be purely speculative. See Dimich, 304 F. Supp. 2d at 519 ("Benefits from an injunction must not be 'too speculative and immeasurable.'"), quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000).

Parker further seeks an order invalidating "the poison pill and/or directing the Individual Defendants to rescind or redeem it and restraining defendants from adopting, implementing or instituting any defensive measures that has or is intended to have the effect of making the consummation of an offer to purchase the Company more difficult or costly for a potential acquiror." Am. Compl. Prayer for Relief ¶ J. She does not allege, however, the value to B&N of such an order. Although a takeover of a large public company likely involves hundreds of millions of dollars, not every takeover is beneficial to a

16

corporation.   In fact, the Delaware Supreme Court has stated that in certain circumstances it is proper for corporate directors to thwart a takeover.   See Paramount Commc'ns Inc. v. QVC Network Inc. (In re Paramount Commc'ns S'holders Litig.), 637 A.2d 34, 43 n.13 (Del. 1993) ("where a potential sale of control by a corporation is not the consequence of a board's action, this Court has recognized the prerogative of a board of directors to resist a third party's unsolicited acquisition proposal or offer").   Parker offers no explanation why an order restraining it from defending against all takeover attempts would be at all valuable to B&N.   Parker's argument that that such an order is worth millions of dollars is thus too speculative to be considered in determining the amount in controversy.   See Am. Standard, Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 718 (S.D.N.Y. 2007) ("this argument must also fail because the precise monetary benefit to American Standard under this theory is too uncertain and speculative to be quantifiable"); cf. DiTolla v. Doral Dental IPA of N.Y., LLC, 469 F.3d 271, 277 (2d Cir. 2006) ("We cannot say beyond mere speculation, however, whether those damages, if they are awarded, would be more than $5 million.   Doral Dental has thus failed to demonstrate that the claim here satisfies CAFA's jurisdictional amount in controversy.").

Finally, Parker argues that although she did not

17

specifically request monetary damages in her prayer for relief, she seeks monetary damages for unjust enrichment and waste of corporate assets claims, which allege damages from "a series of transactions (including the College Booksellers transaction) designed solely to personally benefit Leonard Riggio, Stephen Riggio, and/or other members of the Riggio family," Am. Compl. ¶ 195; see also id. ¶ 198. However, the only statement of a monetary value of damages is Parker's assertion that "the amount in controversy exceeds $75,000, exclusive of interest and costs."

In United Food, the defendants removed the case to federal court, asserting diversity jurisdiction. They argued that although the plaintiff union sought primarily injunctive relief, it alleged, as required by Connecticut law, that it sought "relief in excess of $15,000," and requested in its prayer for relief "such other relief at law or in equity as is fair and just." 30 F.3d at 305 (emphasis in United Food). In rejecting the contention that the complaint satisfied the then-applicable $50,000 amount in controversy, the Court of Appeals stated:

> To the extent that this prayer may be read as seeking damages, however, the pleadings themselves provide no reliable indication of the specific amount, if any, in damages claimed by the Union. Indeed, the only reference to any amount in controversy we find in the record is the Union's boilerplate demand statement, as required by Connecticut state law procedure in all actions, whether legal or equitable, that it seeks relief in excess of $15,000. Such a boilerplate

> demand statement setting forth an open-ended demand
> for an amount in excess of $15,000, without more,
> falls well short of the type of proof we require from
> defendants to establish that that $50,000 amount in
> controversy requirement is met in an action seeking
> primarily injunctive relief.

Id. (emphasis in original).

Here, too, Parker seeks primarily equitable relief. Her boilerplate statement that her claims satisfy the amount in controversy sheds no light on the actual amount of damages she might recover on B&N's behalf. Although she asserts that the challenged transactions were worth millions of dollars, she does not allege the extent to which those transactions injured B&N, nor does she provide "competent proof" to support her "allegations by a preponderance of the evidence." See id. (internal quotation marks omitted).

Accordingly, Parker has not alleged that the matter in controversy exceeds $75,000. Her state law derivative claims are therefore dismissed.

### B.

Parker asserts her remaining claim, a direct claim for breach of fiduciary duty, on behalf of herself and a putative class of all B&N shareholders. She alleges that this Court has jurisdiction over that claim under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). See Am. Compl. ¶ 16.

"CAFA amends the diversity jurisdiction statute by adding § 1332(d), which confers federal jurisdiction over any class action with minimal diversity (e.g., where at least one plaintiff and one defendant are citizens of different states) and an aggregate amount in controversy of at least $5 million (exclusive of interest and costs)." Estate of Pew v. Cardarelli, 527 F.3d 25, 30 (2d Cir. 2008), citing 28 U.S.C. § 1332(d)(2).

The individual defendants argue that Parker does not allege that her class action meets the $5 million amount-in-controversy requirement.

The class claim seeks only equitable relief. See Am. Compl. ¶ 183 ("Plaintiff and the Class are threatened with irreparable injury and have no adequate remedy at law."). As stated above, Parker's requested equitable relief is too speculative to value. Parker thus does not allege that her class claim alleges the requisite $5 million amount in controversy, and that claim is therefore dismissed.

## Leave to Replead

Parker seeks leave to replead her dismissed claims. "Generally, a district court has discretion to deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Platt v. Inc. Vill. of Southampton, 391 F. App'x 62, 66 (2d Cir. 2010)

(internal quotation marks and brackets omitted).

Parker argues that "any deficiencies identified by Defendants go to only the pleading and can be cured." Parker's Opp'n Br. 41. However, the deficiencies in the amended complaint go beyond mere matters of pleading: Parker's section 14(a) claim is again dismissed because Parker does not adequately allege that demand on B&N's board should be excused. She does not attach a proposed second amended complaint or explain how she will further attempt to cure her pleading. Parker's state law claims are dismissed because the relief they seek is too speculative to quantify. That is not a pleading defect, but rather is due to the nature of her sought relief.

Leave to replead is therefore denied. Cf. Platt, 391 F. App'x at 66 ("Where, as here, the proposed amended complaint fails to cure the original complaint's deficiencies, leave to amend was properly denied.").

## Conclusion

Accordingly, defendants' motion to dismiss the amended complaint (Dkt. No. 30) is granted. The clerk is directed to enter judgment accordingly.

So ordered.

21

Dated:  New York, New York
        August 3, 2012

                                    _Louis L. Stanton_
                                     Louis L. Stanton
                                       U.S.D.J.